1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11 | KOREY CURLEY, on behalf of himself    | Case No.: 21-cv-01200-GPC
12 | and other similarly situated aggrieved
   | employees,
13 |                              Plaintiffs,    **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**
14 | v.
15 |                                             **[ECF No. 10]**
   | PAR ELECTRICAL CONTRACTORS,
16 | INC., a Missouri corporation; and DOES
   | 1 through 10, inclusive,
17
18 |                              Defendants.

19
20      On June 30, 2021, Defendant PAR Electrical Contractors ("Defendant") filed a
21 Notice of Removal ("Notice"). ECF No. 1. On July 22, 2021, Plaintiff Korey Curley
22 ("Plaintiff") filed a Motion to Remand ("MTR"). ECF No. 10. On August 13, 2021,
23 Defendant opposed ("Opp."), and the parties fully briefed the issue by August 16, 2021.[1]
24
25
26 [1] As Plaintiff notes, Defendant's Opposition was due on or before August 5, 2021. ECF No. 16 at 1. In
   the interest of a full record, the Court grants Defendant's request to take its Opposition into
27 consideration despite untimely filing due to excusable neglect pursuant to Federal Rule of Civil

                                            1
28                                                                              21-cv-01200-GPC

ECF Nos. 16, 17, 18. The Court finds the matter suitable for disposition based on the parties' filings, and therefore **VACATES** the hearing set for September 10, 2021.

## I. BACKGROUND

On May 4, 2021, Plaintiff filed a Class Action Complaint against Defendant in San Diego Superior Court, alleging causes of action for: (1) failure to pay minimum, regular, and overtime wages; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) failure to provide accurate itemized wage statements; (5) failure to pay wages timely to terminated employees; (6) failure to maintain accurate records; (7) violations of unfair competition law; and civil penalties under the Private Attorneys General Act ("PAGA") for the first through the sixth causes of action. Notice Ex. A at 5. Plaintiff's Complaint sought to certify nine subclasses, applying some, but not all, of the causes of action to each. *Id.* at 6-7. Members of the Plaintiff Class were identified as non-exempt electrical installation employees in the State of California employed "at any time prior to the filing of the complaint until the time of trial." *Id.* at 6.

On June 30, 2021, Defendant filed a Notice of Removal alleging that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"). Defendant's Notice of Removal alleged an amount in controversy based on its calculations of potential damages under Plaintiff's second, third, and fourth causes of action. Under the second and third causes of action (violations of California Labor Code §226.7 concerning meal and rest periods), Defendants calculated potential damages of $15,336,992 by estimating that the proposed class consisted of 748 individuals and assuming each of the 748 individuals suffered the same violation rate as Plaintiff, i.e., one missed meal break and one missed rest break every week for fifty weeks a year. Notice at

---

Procedure 6(b)(1)(B). The request is granted despite the fact that Defendants failed to properly file a motion to extend time.

5. Under the fourth cause of action, Defendant used the maximum statutory penalty of $4,000 multiplied by the estimated class of 748 putative class members to arrive at potential damages of $2,992,000. *Id*. Applying these estimates, Defendants allege damages exceeded CAFA's statutory minimum of $5,000,000.

## II.  DISCUSSION

A defendant seeking to remove a case from a state court to a federal court must file a notice of removal in the federal forum "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Federal courts have jurisdiction over class actions as defined under CAFA if there is a class of over 100 members, minimal diversity exists between the plaintiff and defendant, and the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d). Under CAFA, "the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

The Supreme Court held in *Dart Cherokee Basin Operating Sys. Co., LLC v. Owens*, 574 U.S. 81 (2014) that the defendant's initial notice of removal need not contain evidentiary submissions, and that simple allegations or assertions that the jurisdictional threshold had been met would suffice. *Id.* at 89. The Supreme Court further noted that no antiremoval presumption attends cases invoking CAFA. *Id*. Beyond the initial notice, however, "[w]here a plaintiff contests the defendant's allegations concerning the amount in controversy, both sides may submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (quoting *Dart Cherokee*, 574 U.S. at 88).

Attacks on the sufficiency of jurisdictional allegations may be either "facial" or "factual." A facial attack does not present new evidence, but instead argues that the allegations are "insufficient on their face to invoke federal jurisdiction." *Leite v. Crane*

1  *Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): by accepting the allegations as true and drawing all reasonable inferences in the removing party's favor, then evaluating whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. *Id.* By contrast, a factual attack contests the truth of a party's factual allegations, usually by introducing evidence outside the pleadings. *Salter*, 974 F.3d at 964. However, evidence outside the pleadings is not absolutely required in order for a plaintiff to mount a factual attack. *Harris v. KM Industrial, Inc.*, 980 F.3d 964, 700 (9th Cir. 2020). "A factual attack…need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id*. The responding party must support its jurisdictional allegations against a factual attack with competent proof under the same evidentiary standard that governs in the summary judgment context. *Salter*, 974 F.3d at 964.

### a. Class Size and Minimal Diversity

CAFA requires a class of over 100 members. 28 U.S.C. § 1332(d). Plaintiff's Complaint estimates that there are over 100 individuals in the class. Notice Ex. A at 14. Further, Plaintiff does not contest Defendant's estimate of the proposed class size at 748 employees. MTR at 5. As such, CAFA's class size requirement is met.

The removing party has the burden of pleading minimal diversity. *Ehrman v. Cox Communications, Inc.*, 932 F.3d 1223, 1226. "A party's allegation of minimal diversity may be based on information and belief." *Id.* at 1227 (quoting *Carolina Cas. Inc. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014). In its notice of removal, Defendant alleges that Plaintiff is, and was at the time of the action's commencement, a resident and citizen of California. Notice at 3. Defendant alleges that it is a citizen of Missouri, with its principal place of business in Kansas City, Missouri. *Id.* Plaintiff's Motion protests that Defendant asserted without evidence that Plaintiff is a citizen of

California, and argues that there are "scant allegations" that PAR facilities in Missouri would be sufficient to make Defendant a Missouri citizen. MTR at 5. However, the Motion does not suggest where Plaintiff would be a citizen, if not California, nor does it offer an alternative state where Defendant would be a citizen.

The Court interprets Plaintiff's attack on minimal diversity as a facial challenge, not a factual one. A facial challenge "accepts the truth of the [removing party's] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Ehrman*, 932 F.3d at 1228 (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). Here, Plaintiff does not allege that he is not a citizen of California, nor that Defendant is not a citizen of Missouri, as might be expected in a factual challenge. Instead, Plaintiff contests the sufficiency of Defendant's assertions by pointing to a lack of evidence. That is the essence of a facial challenge, which is foreclosed under the Supreme Court's holding in *Dart Cherokee*. *Salter*, 974 F.3d at 964. Under a facial challenge, the removing defendant is not required to present evidence in support of its allegation of minimal diversity. *Id.* Therefore, Defendant's jurisdictional allegations, which provided a short and plain statement of the parties' citizenships based on information and belief, satisfied Defendant's burden of pleading minimal diversity.[2]

---

[2] Plaintiff's state court Complaint raises the local controversy exception to CAFA jurisdiction, which the Court pauses to address. Under the local controversy exception, "a district shall decline to exercise jurisdiction when more than two-thirds of the putative class members are citizens of the state where the action was filed, the principal injuries occurred in that same state, and at least one significant defendant is a citizen of that state." *Adams v. West Marine Products, Inc.*, 958 F.3d 1216, 1220. The party seeking remand bears the burden of showing that the exception applies. *Id*. Plaintiff has not met that burden. Having accepted that Defendant has adequately pleaded minimal diversity through its assertion of Missouri citizenship, the Court also finds that the local controversy exception does not apply. There is no defendant in this case, let alone a significant one, who is a citizen of California.

### b. Amount in Controversy

Here, as with the issue of minimal diversity, the removing party's burden depends on whether the jurisdictional attack is facial or factual. If the amount in controversy is unclear or ambiguous from the face of the state court complaint, the removing defendant under a factual attack bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold. *Id.* at 962 (quoting *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018). When the claimed amount in controversy is factually challenged, both sides may submit proof and the court will decide, by a preponderance of the evidence, whether the amount in controversy has been met. *Id.* at 963. "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* (quoting *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1197-98 (9th Cir. 2015)).

Here, Plaintiff's state court complaint does not give a specific amount in controversy. Nor does Plaintiff's complaint allege a specific number of individuals in the class, other than an estimate that the class would have over 100 individuals. Notice Ex. A at 14. In order to calculate its amount in controversy allegation, Defendant simply offers a summary statement that it "estimates there are 748 individuals who fall within this [Plaintiff's] class definition." *Id.* at 4. Using this unexplained and unadorned estimate of 748 individuals, Defendant applies the damages it estimates might apply to Plaintiff across the entire alleged class ("Assuming Plaintiff worked fifty weeks a year and missed one meal break and one rest break every week, the penalties are $6,648 for 2018, $7,488 for 2019, and $6368 for 2020, for a total of $20,504. If each class member suffered the same violation with an equal hourly rate, the potential damages are $15,336,992.") *Id.* at 5. Using this blanket theory across its estimate of 748 individuals, Defendant alleges potential damages of $15,336,992 for alleged violations of California Labor Code

§ 226.7, and potential damages of $2,992,000 for alleged violations of Labor Code § 226(e)(1). Notice at 5. Plaintiff's Motion to Remand mounts a factual attack on Defendant's allegations, contesting, *inter alia*, that each absent class member worked 50 workweeks or that the violation rate is 100%. Motion at 5 ("[T]here is no basis to assume the regular rate of each employee's compensation is the same, [and] no basis to assume each absent class member worked 50 workweeks each year during the four-year period . . ."). Plaintiff challenges the substance, not just the form, of Defendant's allegations.

It is therefore Defendant's burden to support its jurisdictional allegations with competent proof by a preponderance of the evidence. *Harris*, 980 F.3d at 701. The preponderance standard "does not require a district court to perform a detailed mathematical calculation of the amount in controversy before determining whether the defendant satisfied its burden." *Id.* The district court should weigh the reasonableness of the removing party's assumptions rather than supply further assumptions of its own. *Id.* Therefore, this Court looks to Defendant's evidence, if any, to weigh whether Defendant has met its burden.

Defendant cites to *Arreola v. Finish Line*, No. 14-cv-03339-LHK, 2014 WL 6982571 (N.D. Cal. Dec. 9, 2014) for the proposition that a rate of one missed meal break and one rest break per week is reasonable. Defendant argues that it has applied this conservative, and therefore reasonable, estimate of one meal and rest period violation per workweek in its calculations. Opp. at 8. However, this argument misses half of the required analysis: the question is not just whether one meal and one rest period violation is a reasonable estimate, but also how the estimated violations should be applied to the individual class members. To arrive at its alleged amount in controversy, Defendant has applied a multiplier (Plaintiff's potential damages assuming a certain violation rate) to a multiplicand (a class of 748 individuals). Notice at 5. Yet, there is no basis for the Court to evaluate whether Defendant's estimate of 748 individuals in the class is reasonable or

whether all 748 individuals worked the entire four-year class period or whether they earned the same wage as the Plaintiff. This is a central component of remand analysis, as the multiplicand permits Defendant to arrive at an amount in controversy of more than $5 million.

      Ultimately, Defendant's case here is distinguishable from *Arreola* in at least one crucial respect: the availability of creditable evidence adequately supporting Defendant's allegations. The court in *Arreola* "credits the evidence Finish Line [Defendant] offers regarding the *average number of class members Finish Line employed at any time* in California, and their *average base rate of pay*. According to a supplemental declaration from one of Finish Line's attorneys . . . these numbers are from Finish Line's human resources, as well as Finish Line's relevant time and payroll records." *Arreola*, 2014 WL 6982571 at *4 (emphasis added). The *Arreola* court found this evidence provided a creditable basis for Finish Line's allegations in light of the allegations contained in Plaintiff's complaint, allowing the court to evaluate how reasonable Defendant's allegations of class size and violation rate were. *Id.* Here, Defendant has failed to provide an average number of class members that were employed at any time or an average base rate of pay. Therefore, Defendant cannot make use of its desired blanket proposition that one violation per week is reasonable as applied to 748 employees over the entire four-year class period.

      *Harris v. KM Industrial, Inc.*, a case also involving putative wage and hour class claims, is instructive and supports remand of the case to state court. In *Harris*, KM Industrial (KMI) assumed, without specific evidence to support its assumption, for purposes of calculating the amount in controversy, that all of the individuals in the putative Hourly Employee Class were also all members of the Meal Period Sub-Class and the Rest Period Sub-Class for the duration of the Relevant Time Period. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 698 (9th Cir. 2020). Thus, for Plaintiff's meal period claim,

21-cv-01200-GPC

KMI assumed that the entire Hourly Employee Class of 442 employees missed one meal period per workweek across the aggregate workweeks. The Ninth Circuit agreed with the district court that "relying on the factually unsupported and unreasonable assumption that the 442 Hourly Employee Class members worked shifts long enough to entitle them to meal and rest periods would exaggerate the amount in controversy." Without proof that all of the 442 Hourly Employee Class members worked sufficient shifts during the 39,834 workweeks to qualify them for meal and rest periods, KMI failed to carry the burden of proving the statutory amount in controversy by a preponderance of the evidence. *Harris v. KM Indus., Inc.*, 980 F.3d at 702.

Here, as in *Harris*, the Defendant failed to provide *any* evidence to support its contentions that the potential damages it calculated with respect to Plaintiff should be applied across the entire class of 748 individuals. While Defendant's Opposition brief states that "the wages of the class are set by a collective bargaining agreement and the members of the proposed class would have the same or comparable wage rate as Plaintiff," Defendant provides no evidence to support this assertion. Opp. at 8.[3] Even if this assertion were well-supported by evidence, a collective bargaining agreement setting the same wages for each class member would not dispose of the issue, since Defendant has also not supplied any evidence for why its calculated violation rate of 100% is reasonable. Similarly to *Harris*, Plaintiff here alleged "causes of action on behalf of specific classes and subclasses, each with its own eligibility criteria derived from particular California Labor Code provisions . . ." *Harris*, 980 F.3d at 701. Nothing in Plaintiff's Complaint indicates how much overlap exists between the entire class and the

---

[3] Defendant's Opposition states: "Now that Plaintiff has contested removal, Defendant submits the evidence herein supporting its allegations . . ." Opp. at 4. Arguments by attorneys in briefing are not evidence, and the Court found no other evidence submitted into the record by Defendants that supported its jurisdictional allegations.

subclasses to which the second and third causes of action apply (First and Second Meal Period subclass, Rest Period subclass). Notice Ex. A at 6-7. Yet Defendant's Notice of Removal applies the second and third cause of action broadly across the entire class without evidentiary justification to arrive at its $15,336,992 amount. Notice at 9.

Just as in *Harris*, Defendant provides no specific evidence to support its assumption that all members of the class are also members of the subclasses identified by Plaintiff.[4] *Harris,* 980 F.3d at 699. The Court finds this an unreasonable assumption that does not satisfy Defendant's burden of proving the amount in controversy by a preponderance of the evidence. *Id.* at 702. Simply pointing to Plaintiff's assertions of a "uniform" policy is too slender a reed, without more, to support Defendant's allegations that every member of the class suffered injuries every week that member worked, thus adding up to over $5,000,000 in potential liability. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193 (9th Cir. 2015) ("a 'pattern and practice' of doing something does not necessarily mean *always* doing something"); *cf. Brumbach v. Hyatt Corporation*, No. 20-cv-2231, 2021 WL 926692, at *9 (S.D. Cal. Mar. 11, 2021) (finding that Defendant's assumption of 100% violation rate based on Plaintiff's allegation of a uniform policy was reasonable, but only where Defendant had supplied competent evidence showing how many employees worked the relevant shifts, and Plaintiff had failed to supply any evidence whatsoever). While the Notice of Removal alleges an amount ($18,328,992) significantly higher than CAFA's $5 million threshold, and therefore it is possible that a

---

[4] This lack of evidence, as previously noted, distinguishes the instant case from Defendant's citations to *Arreola v. Finish Line*, No. 14-cv-03339, 2014 WL 6982571 (N.D. Cal. Dec. 9, 2014), *Unutoa v. Interstate Hotels and Resorts, Inc.*, No. 14-cv-09809, 2015 WL 898512 (C.D. Cal. Mar. 3, 2015), and *Jasso v. Money Mart Exp., Inc.*, No. 11-cv-5500, 2012 WL 699465 (N.D. Cal. Mar. 1, 2012). Opp. at 8. In each of those cases, the removing defendant offered evidence which the Court credited as establishing a basis for the calculated violation rate—usually in the form of a declaration describing the number of employees, average pay periods, weeks worked by the employees at issue, and other relevant factors in the calculation.

reduced violation rate could still result in a sufficient amount in controversy, "it is not the Court's job to perform the mathematical calculations to justify it. That is [Defendant's] burden." *IKEA,* 2020 WL 7334486, at *3 (finding that Defendants had not met their burden despite alleging $22 million in controversy). Even if the Court were to assume Defendant's burden to modulate the alleged $15,336,992, Defendant has "failed to provide any information which would enable the Court to calculate more conservative estimates." *Id.* Based on the lack of evidence put forth by Defendant to support its calculations of the amount in controversy, the Court concludes that Defendant has failed to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 as required under CAFA.

## III. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand to State Court is **GRANTED.**

**IT IS SO ORDERED.**

Dated:  September 1, 2021

Hon. Gonzalo P. Curiel
United States District Judge